# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 09-cr-0325-06 |
| | ) | |
| COSMO FAZIO | ) | |

## MEMORANDUM OPINION AND ORDER

December 27, 2011

Presently before the Court is the MOTION TO WITHDRAW GUILTY PLEA and BRIEF IN SUPPORT filed by defendant Cosmo Fazio (Document Nos. 791 and 823), the RESPONSE filed by the government (Document No. 795), and the POST-HEARING RESPONSE TO MOTION TO WITHDRAW GUILTY PLEA filed by the government (Document No. 831).

On November 21, 2011, the Court conducted an evidentiary hearing on the motion to withdraw guilty plea at which all parties were represented by counsel who presented and argued the issues skillfully and effectively. Lori Fazio, Mark Goldstein, Esquire; and Mark Lancaster, Esquire testified on behalf of Defendant, Cosmo Fazio, who did not testify.

At the conclusion of the hearing, the Court ordered that the record remain open until December 8, 2011, so that counsel, if so desired, could file post-hearing briefs in support of their respective positions. The post-hearing briefs were timely filed and the matter is now ripe for disposition.

Based on the testimony and evidence presented at the hearing, the applicable law, and after considering and balancing the three factors for withdrawal of a guilty plea set forth in *United States v. Jones*, 336 F.3d 245 (3d Cir. 2003), the Court finds that Defendant has failed to

establish any of the required criteria under *Jones*. Therefore, Defendant's motion will be denied.

## BACKGROUND

On December 9, 2009, a federal grand jury sitting in the Western District of Pennsylvania returned an eight-count indictment against defendant Cosmo Fazio and twelve (12) co-defendants. Defendant Fazio was charged only in Count I with Conspiracy to Distribute and Possess with Intent to Distribute 5 Kilograms or More of Cocaine, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846, occurring from in or around January 2009 to on or about November 2009. On March 30, 2010, a federal grand jury in the Western District of Pennsylvania returned a superseding indictment which charged three (3) additional defendants and charged one additional count (Count 9).

A hearing on four (4) suppression motions filed by Defendants was conducted on April 13, 2011, including a motion to suppress wire and electronic communication interceptions, which had been filed by Defendant Curran and joined by a number of defendants, including Defendant Fazio. Prior to the commencement of the hearing, Mark Lancaster, Esquire, attorney for Defendant Fazio, appeared in court with his client and advised that Defendant Fazio was withdrawing "our previously filed motions and motions joined in that were filed by other counsel" as it was "Mr. Fazio's intent to request a change of plea hearing." Transcript at 4 (Document No. 545).

On April 26, 2011, a Text Notice of Hearing was filed which scheduled a Change of Plea Hearing for Defendant Fazio on May 9, 2011. Defendant filed two motions to postpone and/or reschedule the change of plea, both of which were granted. On June 3, 2011, Defendant

Fazio entered his plea of guilty to a lesser included offense of Count I - in particular, conspiracy to distribute and possess with intent to distribute at least 200 grams but less than 300 grams of cocaine. The Court conducted a thorough colloquy with Defendant Fazio in open court, found that he was competent, acting knowingly and voluntarily, and accepted his guilty plea. Sentencing was scheduled on October 3, 2011.

On August 2, 2011, Attorney Lancaster filed a Motion for Leave to Withdraw as Counsel in which he stated that Defendant had retained other private counsel. The motion was granted on August 3, 2011, the appearance of Mark Lancaster as counsel for Defendant Fazio was withdrawn and terminated, and the appearance of Attorney Patrick K. Nightingale was entered on behalf of Defendant.

On August 8, 2011, voir dire and jury selection commenced in the trial against two of Defendant's co-conspirators Bradley Barndt and Franco Badini. The jury trial commenced on August 9, 2011. On August 16, 2011, the jury found both co-conspirators Barndt and Badini guilty of Count I of the superseding indictment.

On August 11, 2011, Attorney Nightingale and Defendant Fazio were ordered by the Court to appear before Probation Officer Terrell Lewis on or before August 25, 2011, in order for the officer to conduct an interview of Defendant Fazio so that she could prepare a Pre-Sentence Investigation Report ("PSI"). Sentencing was continued to November 4, 2011.

The PSI was filed in this case by the Probation Officer on September 30, 2011, with an Addendum filed on October 21, 2011.

On October 26, 2011, Attorney Nightingale filed a Motion to Withdraw As Counsel in which he stated that Defendant had advised that he "wishe[d] to secure new counsel." On the

same day, Attorney Stanton D. Levenson filed a Notice of Attorney Appearance on behalf of Defendant Fazio. By Order of October 31, 2011, the Court granted the Motion to Withdraw as Counsel and the sentencing hearing was once again continued to November 18, 2011.

The next day, November 1, 2011, the instant Motion to Withdraw Plea of Guilty was filed in which Defendant argues that he was denied his Sixth Amendment right to effective assistance of counsel because "his [former criminal defense] attorney failed to properly advise him regarding the immigration consequences of his plea." Mot. at ¶ 5. The government responded that the advice of Defendant Fazio's former counsel was accurate and that Defendant has failed to meet his burden of demonstrating a "fair and just reason" to withdraw his guilty plea. *United States v. Jones,* 36 F.3d 245, 252 (3d Cir. 2003).

### Defendant's Personal and Family Data

Defendant was born and raised in Bari, Italy and immigrated to the United States in 1992, at the age of 23. He is a permanent resident alien. Defendant reports that he can speak Italian, Spanish, and English.

Defendant has been married to Lori (nee) Soukavich since December 1, 2007. Together they have a six year old daughter. Defendant also has two older daughters by a previous marriage, both of whom reside in New York City.

Since January of 2009, Defendant has been the sole proprietor of Catering by Chef Mino. From November of 2004 to August of 2007, he was the co-owner and executive chef at Ciao Baby restaurant; and from June of 2002 to October of 2004, Defendant was the co-owner and executive chef at LaStrata Restaurant.

Defendant reported to the Probation Officer that he last attended a school in Italy and said he stopped attending school with only two years left before he would graduate so that he could go to work. His wife testified that Defendant has the equivalent of an 8th grade education; however, during the change of plea hearing, Defendant stated that he "went to eighth and ninth grade in Italy," which would be the equivalent to 12 grades in the United States. (Transcript of Evidentiary Proceedings at 4-5 (Document No. 813)).

### Pre-Plea Discussions with Attorney Lancaster

Defendant was arrested on the instant charge on December 15, 2009. Following his arrest, Fazio's wife retained attorney Mark Lancaster to represent her husband. Mrs. Fazio met in person with Attorney Lancaster in his office on December 16, 2009, while her husband was still incarcerated. During that meeting, according to Mrs. Fazio, she informed Attorney Lancaster of her husband's immigration status and expressed her concerns as to what the immigration consequence of a conviction might be. According to Mrs. Fazio, on December 18, 2009, Attorney Lancaster texted her and "said deportation would not be an issue." (Tr. at 7.)

On June 2, 2011, the day prior to his scheduled Change of Plea hearing, Defendant Fazio and his wife met with Attorney Lancaster to discuss the pending plea hearing. Mrs. Fazio testified that during this meeting there was no discussion of the potential immigration consequences of the proposed guilty plea.

Contrary to Mrs. Fazio's testimony, Attorney Lancaster testified that during this pre-plea meeting, he reviewed the proposed plea agreement "line by line" with the Fazios "literally reading each paragraph at the time and then answering any questions following the reading of

each paragraph." Attorney Lancaster characterized the review as "careful and thorough." (Tr. at 60.)

Paragraph 12 of the Plea Agreement specifically recites the potential immigration consequences as follows:

> Cosmo Fazio recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorney or the district court, <u>can predict to a certainty</u> the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, <u>even if the consequence is his automatic removal from the United States.</u>

Plea Agreement, at ¶ 12 (emphasis added). Attorney Lancaster testified that he advised Mr. Fazio as follows:

> I advised him that while this conviction, and I explained to him that in federal court, at the time of the plea, you are convicted, unlike state court where a conviction is not finalized until you are actually sentenced, and, as a result, there could be immigration consequences. However, it was my opinion that he would be entitled to a hearing. And given what I had learned of his family and friends and background, I was confident that with competent immigration counsel, being unaware of the law, that he stood a good chance of not being deported. I certainly told him it was a possibility, however.

(Tr. at 59.)

### The Plea Hearing

On June 3, 2011, Defendant Fazio appeared in Court with Attorney Lancaster and entered his plea of guilty to a lesser included offense of Count I of the superseding indictment. Mrs. Fazio was not present in Court during the change of plea hearing.

6

At the hearing, the Court placed Defendant under oath and conducted an extensive colloquy with him in open session and in very clear, plain language. The Court found Defendant competent to enter a plea of guilty without objection from Defendant or his counsel. The Court further explained to Defendant his constitutional and other rights, including: Defendant's right to a trial by jury; his privilege against self-incrimination; his right to participate in jury selection; the applicable burden of proof beyond a reasonable doubt which the government would be required to meet at trial; and his right to confront, question and cross-examine witnesses at trial. (Tr. at 12-15.) Throughout the colloquy, Defendant Fazio affirmatively indicated that he understood the effect of a guilty plea and stated to the Court that he still desired to plead guilty. At no time did Defendant request the assistance of an interpreter or appear to be confused throughout the proceeding.

Significantly, the Court also explained the minimum and maximum incarceration sentence and other penalties under the law which may be imposed upon Defendant for a conviction of a lesser included offense of Count 1 of the superseding indictment:

THE COURT:  A term of imprisonment of up to 20 years; if imprisoned, a term of supervised release of at least three years; a fine not to exceed one million dollars; and a mandatory special assessment of $100 per count of the indictment to which you enter a plea of guilty. Do you understand those potential penalties?

THE DEFENDANT: Yes, Your Honor.

. . .

THE COURT:  Mr. Fazio, in addition to the possible penalties of which I have advised you, because you are not a United States citizen, you will also face a risk of removal from the United States after you have served any sentence imposed by this Court. Under federal law, a broad range of crimes are removable offenses, including the offense to which you are pleading guilty. Removal and

7

other immigration consequences are the subject of a separate proceeding, however.

Do you understand that no one, including your attorney or me or the government's attorney can predict to a certainty the effect of your conviction on your immigration status?

THE DEFENDANT:    Yes.

THE COURT:        Now, knowing this, do you nevertheless want to plead guilty regardless of any immigration consequences that your plea of guilty may entail, even if the consequence is your automatic removal from the United States?

THE DEFENDANT:    Yes.

Transcript, Change of Plea hearing, at 13-14 (emphasis added).

Defendant Fazio stated that he understood everything the Court had stated to him, including the minimum and maximum penalties for his offense. He further testified that no one had threatened or coerced him in any way to plead guilty, and that, with respect to the terms of his written plea agreement with the government, no promises had been made to induce him to plead guilty. Defendant also stated that he had read the plea agreement and reviewed it completely with his attorney; that he understood all of the content of the plea agreement, and that he had signed it in the presence of his attorney. (*Id.* at 26).

The Assistant United States Attorney proceeded to place on the record the elements of the offense, as well as a lengthy factual recitation of the government's evidence, *to wit:*

Your Honor, if the case had proceeded to trial, the evidence against this defendant is as follows: In January 2009, the Drug Enforcement Administration began an investigation of the drug trafficking organization that was led by David Curran.

. . .

Between March of 2009 and December of 2009, Mr. Curran resided in a house at 226 Brookside Boulevard in Upper St. Clair. Mr. Curran resided

there on a rent-to-own basis. The house was owned by this defendant Mr. Fazio's wife. Mr. Fazio acted on his wife's behalf in managing that rental property and that rental agreement.

During this period, Mr. Fazio was aware that Mr. Curran was a cocaine dealer and that Mr. Curran was using that residence to receive and distribute cocaine. Between March 2009 and December 2009, Mr. Curran periodically provided ounce quantities of cocaine to Mr. Fazio. Mr. Fazio thereafter distributed some of that cocaine to others.

(Tr. at 30-32).

After the Assistant U.S. Attorney summarized Defendant's involvement in the offense, the Court asked Defendant whether he agreed with the government's summary of what he did. In response, Fazio stated:

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are there any additions or corrections you wish to make on the record? Is there anything you want to say about that?

THE DEFENDANT: No, Your Honor.

THE COURT: The Court finds that there is a factual basis to accept the defendant's plea of guilty, if the same is now entered. Mr. Fazio, do you still wish to plead guilty?

THE DEFENDANT. Yes, Your Honor.

(Tr. at 32.) The Court proceeded to ask Defendant the following:

THE COURT: Mr. Fazio, you're charged by the United States of America in Count I of the criminal superseding indictment at Criminal No. 09-325 with the lesser included offense of conspiracy to distribute and possession with intent to distribute at least 200 grams but less than 300 grams of cocaine, in violation of Title 21, United States Code, Section 846. How do you plead to that charge?

THE DEFENDANT: Yes – no– guilty.

THE COURT: How do you plead to the charge?

THE DEFENDANT: Yes. Yes. I understand, Your Honor. Yes, I plead guilty.

THE COURT:  You plead guilty?

THE DEFENDANT:  Yes.

(Tr. at 34-35.)

The Court concluded the proceeding by making express findings that Defendant was competent, that he knew and understand his right to a jury trial and the consequences of waiving that right and that he knew what the minimum and/or maximum penalties are for the lesser included offense to which he was pleading guilty.  (Tr. at 35.)   The Court entered a judgment of guilty on the record and sentencing was scheduled on October 3, 2011.

### Post-Hearing Consultation with Immigration Attorney

Mrs. Fazio testified that after her husband pled guilty, she became concerned about the possible immigration consequences of Defendant's conviction and contacted Goldstein & Associates, a law firm specializing in immigration law.  On June 13, 2011, ten days after the entry of his guilty plea, Defendant Fazio and his wife,  Attorney Lancaster, and John Evans, a Fazio family friend and lawyer, met with Attorneys Mark Goldstein and Andrew Wood.  During that meeting, Attorney Goldstein advised that because Defendant Fazio had pled guilty to an aggravated felony,[1] he had no defense to deportation.  At the meeting, Attorney Lancaster stated

---

[1] Attorney Goldstein relied upon 8 U.S.C. § 1227(2)(iii) which provides as follows: "Aggravated felony.  Any alien who is convicted of an aggravated felony at any time after admission is deportable."  For immigration purposes, aggravated felony is defined as any "illicit trafficking in a controlled substance (as defined in Section 802 of Title 21), including a drug trafficking crime."

 Although Attorney Goldstein does not reference this provision, it appears that § 1227(2)(B) may also be relevant, which provides:  "Controlled substances. (i)  Conviction. Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a

continue..

that he did not realize that Defendant's conviction would require automatic deportation, that he had made a mistake, and that he had told the Fazios that there would be ways of trying to fight deportation.  ( Tr. at 33, 34.)

On October 11, 2011, Attorney Goldstein issued an advisory opinion letter in which he opined "[c]ontrary to the language of his plea agreement, Mr. Fazio would absolutely be detained and deported, absent a change of plea."[2]  According to Attorney Goldstein, Mr. Fazio's "plea clearly fits within the Immigration and Nationality Act's [] statutory definition of an aggravated felony and the effect of this particular plea on his immigration status is certain." Advisory Opinion Letter.  Attorney Goldstein reaffirmed his opinion during the evidentiary hearing when he testified that because of this conviction there was no "reasonable possibility" that Defendant could avoid deportation.  (Tr. at 32.)

During cross examination, Attorney Goldstein conceded, although hesitantly, that it was possible for someone who was convicted of the identical crime that Defendant was

---

[1]...continue
foreign country related to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."   "The term 'controlled substance' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter."  21 U.S.C. 802(6).  Cocaine is listed in Schedule II.

[2] Mrs. Fazio testified that her husband's second attorney, Patrick Nightingale, met with the Fazios and Attorney Goldstein.  After their meeting, Attorney Nightingale sent a letter to the Assistant U.S. Attorney in which he requested that Defendant be allowed to change his plea to a crime which was not an aggravated felony, which would allow Defendant the ability to stay in the country.  According to Mrs. Fazio, the government rejected the request.  (Tr. at 12-13.)

convicted of to remain in the country if the person was provided with an S visa.[3]  Attorney Goldstein also testified that a change in the law could allow the Defendant to remain in the United States, although he also testified that he was not aware of any movement in Congress to change the law.  (Tr. at 47.)

Additionally, upon questioning by the Court, Attorney Goldstein also testified that he was aware that the plea agreement in this case reflected Defendant's commitment to the United States government to cooperate in this prosecution and potentially others.  Attorney Goldstein testified that he was not familiar with the procedures of the government to know the timing of when an S visa might be offered by the government - i.e., either before a defendant pled guilty or was found guilty at a trial.  Attorney Goldstein also conceded there was the potential, although rare, of a presidential pardon which would definitely have an impact on Defendant's deportation status.  (Tr. at 51.)

### Discussion

On November 1, 2011, after the PSI had been prepared, and seventeen (17) days prior to sentencing, Defendant, through his third retained counsel, filed the instant Motion to Withdraw Guilty Plea.  In the Motion, Defendant asserts that he was denied his Sixth Amendment right to the effective assistance of counsel because his attorney, Mark Lancaster, Esquire, failed to properly advise him of the immigration consequences of his plea of guilty and he "denies that he was a part of the alleged conspiracy.  If allowed to withdraw his guilty plea,

---

[3] According to Attorney Goldstein, "an S visa is a visa that is offered by the federal government or the immigration service when somebody is cooperating with a federal investigation, and it's offered for the purpose of protecting the person so that they can remain in the United States after the whole process is undergone."  (Tr. at 38.)  Attorney Goldstein testified that he had "rarely seen any S visas being offered." *(Id*. at 50.)

the Defendant intends to plead not guilty and proceed to trial." Mot. at ¶¶ 5, 12. The government, not surprisingly, adamantly opposes Defendant's motion.

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure requires a criminal defendant to show a "fair and just reason" in order to withdraw a guilty plea previously accepted by the court. In determining whether a "fair and just reason" has been established, the Court must examine each of the following three factors: (1) whether defendant asserts his innocence; (2) the strength of defendant's reasons to withdraw the plea; and (3) whether the government would be prejudiced by the withdrawal. *Jones*, 336 F.3d at 252; *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001); *United States v. Huff*, 873 F.2d 709, 711 (3d Cir. 1989). These factors are not mandatory elements that a defendant must establish in order to withdraw a guilty plea; rather, the district court must analyze the factors *in toto* to reach its conclusion as to whether the defendant has set forth a "fair and just" reason to withdraw the guilty plea. *United States v. Wilder,* 134 Fed. Appx. 527 (3d Cir. 2005); *see also United States v. Wilder*, 2006 WL 3024702 (3d Cir. Oct. 25, 2006).

The defendant bears the substantial burden of demonstrating that a "fair and just reason" exists for withdrawing the plea, *United States v. Isaac*, 141 F.3d 477, 485 (3d Cir. 1990), and that burden is "substantial." *Jones,* 336 F.3d at 252. This heavy burden reflects the notion that "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *Brown,* 250 F.3d at 815. *See also United States v. Hyde*, 520 U.S. 620 (1977) ("After the defendant has sworn in open court that he actually committed the crimes, after he has stated that he is pleading guilty because he is guilty, after the court has found a factual basis for the plea, and after the court has explicitly announced that it accepts the plea, [a defendant cannot]

withdraw a guilty plea simply on a lark.")  "A shift in defense tactics, a change of mind, <u>or the</u> <u>fear of punishment</u> are not adequate reasons to impose on the government the expense, difficulty and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Jones*, 979 F.2d 317, 318 (3d Cir. 1992) (emphasis added).

Furthermore, because Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires the court to be satisfied that there is a factual basis for the plea, in order to demonstrate a "fair and just reason" to withdraw the plea the "defendant must . . . not only reassert innocence, but give sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial."  *United States v. Jones*, 979 F.2d at 318 (emphasis added).

A.      <u>Assertion of Innocence</u>

Under the test outlined in *Jones,* the first issue the Court must address is whether Defendant properly asserted his innocence as part of his request to withdraw his plea.  In this case, Defendant summarily claims that he "denies that he was a part of the alleged conspiracy," but does not present any argument in support of this position.  Mot. at ¶ 12.

An assertion of innocence by the defendant weighs heavily in favor of granting a plea withdrawal motion if the assertion is credible. *Government of Virgin Islands v. Berry,* 631 F.2d 214, 220 (3d Cir. 1980).   "Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw her guilty plea . . . [they] must be buttressed by facts in the record that support a claimed defense."  *United States v. Brown*, 250 F.3d 811, 818 (3d Cir. 2001).

The Court finds that Defendant's assertion of innocence is lacking in credibility. Defendant has not proffered any factual contention or specific legal defense in support of his

assertion.  *See United States v. Barker*, 514 F.3d 208, 220 (C.A.D.C.), *cert. denied*, 421 U.S.

1013 (1975) (movant has not effectively denied his culpability and withdrawal motion need not

be granted if movant has not made out a legally cognizable defense.)  Significantly, during the

plea hearing, Defendant acknowledged and openly admitted that he committed the crime.

  For these reasons and in light of Defendant's admissions during his guilty plea

colloquy hearing, and from the plethora of witnesses and evidence available to support the

government's position of which the Court is aware from the trial of Defendant's co-conspirators,

the Court finds and rules that Defendant's assertion of innocence is unconvincing.  The Court

concludes that Defendant has failed to adequately assert his innocence under *Jones:*  bare

assertions of innocence do not entitle Defendant to the privilege of withdrawing his guilty plea.

B.  <u>The Strength of Defendant's Reason(s) to Withdraw the Plea</u>

  Defendant argues that he must be allowed to withdraw his plea because he was not

properly advised of the immigration consequences of his guilty plea in violation of *Padilla v.*

*Kentucky,* – U.S. --, 130 S.Ct. 1473 (2010).  Distilled to its essence, Defendant's argument is that

Attorney Lancaster painted an unrealistic picture of the immigration consequences of his guilty

plea and that had he been provided with the proper legal advice there would have been no

rational reason for him to plead guilty.

  In *Padilla v. Kentucky*, the United States Supreme Court held that competent counsel

has a duty to give clear advice regarding the deportation consequences of a guilty plea.  *Padilla,*

130 S.Ct. at 1483.  The petitioner in *Padilla* claimed that his counsel failed to advise him of the

possibility of deportation, and told him that "he did not have to worry about immigration status

since he had been in the country so long."  *Id*. at 1478.  The Supreme Court explained that

removal is "practically inevitable" when a non-citizen commits a removable offense and that "counsel must inform her client whether his plea <u>carries a risk </u>of deportation." *Id.* at 1480, 1486 (emphasis added). The *Padilla* Court held that in cases such as those in which the consequences can be divined "simply from reading the text of the statute," the mere failure to warn of a removal consequence is constitutionally deficient representation.

     As in *Padilla*, the United States Court of Appeals for the Third Circuit recently found that counsel was constitutionally deficient when counsel failed to advise petitioner of the adverse immigration consequences of his guilty plea. *United States v. Orocio*, 654 F.3d 630, 642-43 (3d Cir. 2011). Like counsel in the *Padilla* case, counsel in *Orocio* failed to advise his client of the "near certain removal consequences of pleading guilty to a controlled substance offense." *Id.* at 642.[4]

---

[4] It should be noted that both the *Padilla* and *Orocio* cases involved post-conviction relief. The *Padilla* decision clarified the *Strickland* standard for ineffective assistance of counsel in the context of the immigration consequences of plea agreements. The *Padilla* Court ruled that counsel, in order to be constitutionally competent, has an obligation to advise criminal defendants whether an offense to which they may plead guilty will result in removal from the United States. *Padilla,* 130 S.C. at 1478.

16

However, neither *Padilla* nor *Orocio* require an attorney to advise his client of an <u>absolute certainty</u> of deportation at the plea stage. Rather, our court of appeals explained that, under *Padilla*, "the failure of defense counsel to warn a defendant that a plea would make the defendant <u>eligible</u> for removal is a constitutional defect in representation that satisfies the first prong of the *Strickland* test." *Id*. at 641 (emphasis added). *See also Hutchinson v. United States*, No. 1:06-cr-173, 2011 WL 5041002 * 8 (M.D. Pa. Oct. 24, 2011) (petitioner claim for ineffective assistance denied where counsel advised petitioner of a "high probability" that he would be deported and counsel testified that he did not tell petitioner that deportation was a certainty because "the contingencies of life are various and they're measured by different degrees.")

In this case, Attorney Lancaster testified that he conducted a thorough and careful review of the plea agreement with his client prior to the change of plea hearing and that he advised Defendant that there could be immigration consequences to his guilty plea, but that it was Attorney Lancaster's opinion that Defendant would be entitled to an immigration hearing and that he "stood a chance of not being deported." Based on Attorney Lancaster's testimony, the Court cannot find that Defendant was not properly advised of the possible immigration consequences of his guilty plea.

Furthermore, the Court finds that even assuming *arguendo* that Attorney Lancaster did not adequately advise Defendant of the possible immigration consequences of a guilty plea in this case, Defendant was clearly advised by the Court during the plea hearing colloquy that he faced potential immigration consequences. *See, e.g., U.S. Hernandez- Monreal*, 404 Fed. Appx. 714, 714-15 (4th Cir. 2010) (finding trial court's failure to consider a petition for writ of error coram nobis harmless where petitioner, during a Rule 11 plea hearing, affirmatively

acknowledged his understanding that his plea could render him subject to deportation); *Gonzalez v. United States*, 10-cv-5463, 2010 WL 3465603, at *1 (S.D. N.Y. Sept. 3, 2010) ("Assuming that Gonzalez's trial attorney failed to advise him that he could be deported as a result of pleading guilty, that failure was not prejudicial since, prior to accepting his plea, [the court] advised Gonzalez that he could be deported as a result of his guilty plea"); *United States v. Cruz-Veloz*, Crim. No. 07-1023, 2010 WL 2925048, at *3 (D.N.J. July 20, 2010) (concluding that "[p]etitioner was not prejudiced by counsel's alleged failure to inform him of the deportation consequences of his plea because the court informed him of the consequences" in the course of the plea hearing.)

The Court finds and rules that Defendant has not satisfied his burden of demonstrating the existence of any fair and just reasons why the Court should permit him to withdraw his guilty plea.

C.        Prejudice to Government

If the defendant were to succeed in showing a fair and just reason for withdrawing his guilty plea, the burden would shift to the government to show that it would be prejudiced by the withdrawal. However, the Court of Appeals for the Third Circuit has made clear that "the government is not required to show prejudice when a defendant has shown no sufficient grounds for permitting withdrawal of the plea." *See United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986). Because the Court has found that Defendant has not presented sufficient grounds to permit him to withdraw his guilty plea, the Court is not required to consider the question of resultant prejudice to the government. Nevertheless, in the interest of being thorough, the Court will address the final prong of the *Jones* test.

Increased cost and inconvenience to the government are grounds for finding prejudice, as are the diminished memory and incentive to cooperate of Government witnesses. The mere "adverse impact on the administration of justice," however, is not adequate. *Government of the Virgin Islands v. Knight,* 764 F. Supp. 1042, 1050 (D.V.I. 1991). As the government correctly notes, the trial of Defendant's co-conspirators has already occurred, cooperating witnesses have testified and been sentenced, and several of the cooperating witnesses are now far from the Western District of Pennsylvania.

Also, there exists a preference in the federal system for joint trials of defendants who are indicted together. *See Zafiro v. United States,* 506 U.S. 534 (1993); *accord United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). Joint trials "play a vital role in the criminal justice system." *Id.* In fact, the United States Supreme Court has repeatedly approved joint trials because such trials promote efficiency and "serve justice by avoiding the scandal and inequity of inconsistent verdicts." *Id.* "Generally speaking, where several defendants are jointly indicted they should be tried together," particularly where the charges against them arise out of the same series of acts or transactions. *Id.*

For the aforementioned reasons, despite the fact that the Court need not address the issue of prejudice in situations where, as here, the defendant has not offered a fair and just reason to permit withdrawing his plea, the Court finds and rules that the government would be severely prejudiced by Defendant's withdrawal of his guilty plea at this stage of the proceedings.

## CONCLUSION

The Court finds and rules that Defendant has failed to present either a credible assertion of innocence or a fair and just reason for this Court to permit him to withdraw his plea

of guilty.  On the other hand, the government has demonstrated that it would be unfairly prejudiced by such a withdrawal at this time.

Therefore, after considering and balancing the three factors set forth in *Jones*, the Court concludes that Defendant has failed to establish any of the required criteria under *Jones*. Accordingly, Defendant's motion to withdraw his guilty plea will be denied.  An appropriate Order follows.

McVerry, J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     )
                                  )

          v.                     )     02: 09-cr-0325-06

                                  )

COSMO FAZIO                   )

## ORDER OF COURT

       AND NOW, this 27th day of December, 2011, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** that the

Motion to Withdraw Guilty Plea filed by Cosmo Fazio is **DENIED.**

       Defendant shall appear in this Court for Sentencing on **Thursday, January 19, 2012**

**at 1:30 p.m.**


                             BY THE COURT:

                             s/Terrence F. McVerry
                             United States District Court Judge


cc:       Craig W. Haller,
           Assistant U.S. Attorney
           Email: craig.haller@usdoj.gov

           Stanton D. Levenson, Esquire
           Email: stan@seriousdefense.com

           Terrell Lewis,
           U.S. Probation Officer